UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 17 CR 363 (GBD)

PEDRO GARCIA PENA,
a/k/a "Nano"
Defendant.
Plea
------------------------------x

**New York, N.Y.**
April 10, 2019
10:30 a.m.

**Before:**

**HON. GEORGE B. DANIELS,**

**District Judge**

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
**BY: MATTHEW D. PODOLSKY**

Assistant United States Attorney

**SULLIVAN & CROMWELL, LLP**
**Attorneys for Defendant**
**BY: ALEXANDER J. WILLSCHER**
**ELIZABETH V. YOUNG**

**Also Present:**
**Mirta Hess, Interpreter (Spanish)**

(Case called)

MR. PODOLSKY: Good morning, your Honor. Matthew Poldolsky, for the government.

THE COURT: Good morning, Mr. Podolsky.

MR. WILLSCHER: Good morning, your Honor, Alexander Willscher and Ms. Elizabeth Young, from Sullivan & Cromwell, for Mr. Pena.

THE COURT: Good morning.

What's the status from the government's position?

MR. PODOLSKY: Your Honor, at this point, the parties have signed a plea agreement, and the government understands that the defendant is prepared to allocute today to Count Three of the indictment.

THE COURT: Mr. Willscher.

MR. WILLSCHER: I agree, your Honor.

THE COURT: Could we swear him in.

(Defendant sworn)

THE DEFENDANT: I accept that.

THE COURT: You can be seated, sir.

Now, do you understand that you're now under oath and that if you answer any of my questions falsely, your false or untrue answers may later be used against you in another prosecution for perjury or making a false statement?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, what is your full name, sir?

THE DEFENDANT: Pedro Garcia Pena.

THE COURT: And how old are you?

THE DEFENDANT: I'm 31 years old.

THE COURT: And how far did you go in school?

THE DEFENDANT: I got through the fourth year of school. I had one subject left.

THE COURT: And how old were you when you stopped school?

THE DEFENDANT: 19 years old.

THE COURT: And can you understand the interpreter clearly?

THE DEFENDANT: Yes, sir.

THE COURT: And I'd ask the interpreter, can you understand the defendant clearly?

THE INTERPRETER: Yes, your Honor.

THE COURT: And Mr. Pena, are you now -- or have you recently been under the care of a doctor or psychiatrist?

THE DEFENDANT: A doctor, yes.

THE COURT: And what kind of treatment have you been receiving?

THE DEFENDANT: I've gotten some treatment for some condition that appeared on my skin. But it is fine now, and I'm fine.

THE COURT: All right. And have you otherwise been

treated or hospitalized for any mental illness or any type of drug or alcohol addiction?

THE DEFENDANT: No, sir.

THE COURT: And in the past 24 hours, have you taken any drugs, medicine or pills?

THE DEFENDANT: No, sir.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, sir.

THE COURT: Are you feeling well today?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any doubt as to the defendant's competency to plead?

MR. PODOLSKY: No doubt, your Honor.

MR. WILLSCHER: No, your Honor.

THE COURT: You wish to withdraw your plea of not guilty and you wish to enter a plea to --

THE DEFENDANT: Yes, sir.

THE COURT: Now, have you had a full opportunity to discuss your case with your attorney and to discuss the consequences of entering a plea of guilty?

THE DEFENDANT: Yes, sir.

THE COURT: And are you satisfied with your attorneys and their representation of you?

THE DEFENDANT: Yes, sir.

THE COURT: Then on the basis of the defendant's

responses to my questions, and my observation of his demeanor, I find he's fully competent to enter an informed plea at this time.

Sir, before I accept any plea from you, I'm going to ask you certain questions. And my questions are intended to satisfy me that you wish to plead guilty because you are, in fact, guilty and that you fully understand the consequences of your guilty plea. If you do not understand the question, please stop me and ask me or your attorney for further explanation.

Is that clear?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm first going to describe to you certain rights that you have under the constitution and laws of the United States. You'll be giving up these rights if you enter a plea of guilty. So, again, please listen carefully, because at the end of my description of all of your rights, I'll again ask you whether you fully understood all that I've said; okay?

THE DEFENDANT: Yes, sir.

THE COURT: Now, first of all, under the constitution and laws of the United States, you have a right to a speedy and public trial by a jury on all the charges against you which are contained in the indictment.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if there were a trial, you'd be presumed innocent, and the government would be required to prove your guilt by competent evidence and beyond a reasonable doubt, and you would not have to prove that you were innocent at the trial.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If there were a trial, you'd have a right to be represented by an attorney at that trial and any related proceedings thereafter, and if you could not afford an attorney, one would be provided to you free of cost.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if there were a trial, you'd have a right to see and hear all the witnesses against you, and your attorney could cross-examine those witnesses, and you'd have a right to have subpoenas issued or either compulsory process used to compel witnesses to testify in your defense. And you'd have the right to have your attorney object to the government's evidence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if there were a trial, you'd have a right to testify if you wanted to, and no one could force you

to testify if you did not want to. In fact, no inference or suggestion of guilt could be drawn by the jury if you chose not to testify at a trial. You could go to trial without testifying and calling any witnesses or presenting any evidence whatsoever.

Do you fully understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that by entering a plea of guilty today, you're giving up each and every one of these rights, that you're waiving these rights, and the trial that we had scheduled for July 15th will not occur, and you will have no trial?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand you can change your mind right now and refuse to enter a plea of guilty? You do not have to enter this plea of guilty if for any reason you do not want to.

Do you fully understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, have you received a copy of the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: And have you had it translated to you?

THE DEFENDANT: Yes, sir.

THE COURT: And did you discuss the charges in that indictment with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that Count Three to which you're offering to plead guilty, charges you with use, carrying and in possession of a firearm and aiding and abetting the use and carry and possession of a firearm, in connection with crimes of violence, namely, robbery, in connection with a robbery conspiracy charged in Count One.

Do you understand that charge?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand the maximum possible penalty that can be imposed on the crimes of which you're offering to plead guilty is a maximum sentence of up to life imprisonment. It carries a mandatory minimum sentence of five years in prison, which must run consecutive to any other sentence that's imposed. And a maximum term of five years' supervised release, a maximum fine of up to $250,000, and I must impose a $100 mandatory special assessment.

Do you understand that those are the penalties that can be imposed on the crimes to which you're offering to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: And supervised release means you'd be subject to monitoring when you're released from prison, and

that supervision would be under the terms and conditions which could lead to your re-imprisonment without a jury trial if you violated any conditions of your release.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you further understand that if you're not a United States citizen and I accept your guilty plea, that felony conviction can deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you also understand that if you're not a citizen of the United States, and I accept your guilty plea, additionally, that conviction may subject you to deportation and/or deprive you of your right to apply for United States citizenship or to reenter this country?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And by one of the expressed terms of your plea agreement, it indicates that you recognize that if you're not a citizen of the United States, your guilty plea conviction makes it very likely that your deportation from the United States is presumptively mandatory, and that at a minimum, you

would be at a risk of being deported or suffering other adverse immigration consequences.

Do you understand that language in your agreement?

THE DEFENDANT: Yes, sir.

THE COURT: And under current law, the sentencing guidelines, the judges must consider in determining your sentence. Have you discussed the sentencing guidelines with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And although there may be a calculation of the applicable guideline range contained in the plea agreement, this Court will not be able to determine your sentencing guideline range until after the presentence report is completed by the probation department, and you and the government have had a chance to challenge any of the facts reported by the probation officer and his office.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you further understand that even after I have determined what guideline range applies in your case, I have the authority to impose a sentence that's higher or lower than the sentence calculated by the sentencing guidelines.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that if an attorney or anyone has attempted to estimate or predict what your sentence might be, that estimation or prediction could be wrong?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Neither your attorney or the United States attorney can or should give you any assurance as to what your sentence will be. I cannot determine that sentence until after the presentence report is completed and I've ruled on any challenges in to the report and determined whether there are any grounds to depart up or down the sentencing guideline range, and I must determine what is a reasonable sentence in your particular case.

Do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you also fully understand that even if your sentence is different from what the attorney or anyone else told you it might be, or if it is different from what you expect, you'd still be bound by the guilty plea that you're entering today, you will not be allowed to withdraw your guilty plea after entering it, and I will sentence you on the day of sentencing pursuant to the guilty plea that you're entering today?

Do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I've been given a letter plea agreement. Is that your signature on the last page of this agreement?

THE DEFENDANT: Yes, sir.

THE COURT: And did you have this agreement translated to you before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: And did you discuss the terms of this agreement with your attorneys before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: And did you fully understand the agreement before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: And does this letter constitute your complete and total understanding of the entire agreement as entered into by the prosecutor, your attorney and you?

THE DEFENDANT: Yes, sir.

THE COURT: Is everything you understand about your plea and sentence contained in the agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Anybody promise you anything that's been left out of this agreement?

THE DEFENDANT: No, sir.

THE COURT: And do you understand that by one of the

expressed terms of this agreement, you're waiving your right to file any appeal of the conviction and sentence in this case if the sentence is within or below the stipulated guideline range, as laid out in this agreement.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone threatened you or forced you to plead guilty or enter into this plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Mr. Willscher, do you know of any valid defense that would prevail at trial or any reason why your client should not be permitted to plea?

MR. WILLSCHER: No, your Honor.

THE COURT: Mr. Pena, tell me what you did that makes you guilty of this crime.

THE DEFENDANT: On April 27, 2017, I conspired with people to steal money, and there were weapons involved.

THE COURT: So, how were the weapons involved?

THE DEFENDANT: What was there?

THE COURT: You said there were weapons involved. How were weapons involved in the crime that you committed?

THE DEFENDANT: Oh, tell him that they were in the back. They were in the back of the vehicle.

THE COURT: All right. Did you know weapons were involved in this activity?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And what crime were these weapons held for, in relationship to what activity? Why?

THE DEFENDANT: To commit the act.

THE COURT: Which act?

THE DEFENDANT: The robbery.

THE COURT: All right. And how many guns were in the car?

THE DEFENDANT: There were two weapons.

THE COURT: And how many people were in the car?

THE DEFENDANT: Three people.

THE COURT: All right. And where were you headed?

THE DEFENDANT: They were in the back of the car.

THE COURT: Where were you headed? Where was everybody headed?

THE DEFENDANT: To Manhattan?

THE COURT: Where? To do what?

THE DEFENDANT: I don't recall.

THE COURT: To do what?

THE DEFENDANT: The robbery.

THE COURT: And when you were involved in this activity, did you know what you were doing was illegal?

THE DEFENDANT: Can you repeat that for me, please?

THE COURT: Yes. When you were involved in this activity, did you know what you were doing was illegal?

THE DEFENDANT: Yes, sir.

THE COURT: And where were you in the car? What part of the city were you in?

THE DEFENDANT: I was in the back.

THE COURT: I mean, what side?

THE DEFENDANT: Right-hand side.

THE COURT: No. Bronx? Queens?

THE DEFENDANT: Oh. Manhattan.

THE COURT: So, how do you plead to this charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And you're pleading guilty because you are, in fact, guilty of this charge?

THE DEFENDANT: Yes, sir.

THE COURT: And you're pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: And one other question.

Who were these people that you were intending to rob?

THE DEFENDANT: Who were the people?

THE COURT: Yes. Who were they?

THE DEFENDANT: Who were we going to rob?

THE COURT: Yes.

THE DEFENDANT: No. There wasn't a robbery. It was entrapment.

THE COURT: You said you were going to rob somebody. Who were you going to rob? You had guns.

Did you intend to do this or did you not intend to do this?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. So, who did you intend to rob?

THE DEFENDANT: Oh, people with drugs.

THE COURT: All right. And they were drug dealers?

THE DEFENDANT: Yes.

THE COURT: And what did you expect to take from them?

THE DEFENDANT: Money.

THE COURT: Anything else?

THE DEFENDANT: No, sir.

THE COURT: All right. All right.

Anything further?

MR. PODOLSKY: I think it was implicit in one of your questions, but I want to make sure that he says it. The two weapons were, in fact, firearms. I just wanted to make sure that he states that for the record.

THE COURT: The two weapons in the car that the three of you, I guess you said, that were going to the robbery, they were firearms; is that right?

THE DEFENDANT: No, sir.

THE COURT: Well, what kind of guns were they? Firearms?

THE DEFENDANT: A revolver.

THE COURT: Okay.

THE DEFENDANT: And a weapon which wasn't a firearm.

THE COURT: What kind of a weapon was that?

THE DEFENDANT: I can't tell you because I didn't touch that weapon.

THE COURT: All right. But what was it? A knife, a gun?

THE DEFENDANT: No. A pistol.

THE COURT: Oh, okay. All right.

Anything further on the application?

MR. PODOLSKY: No, your Honor.

THE COURT: All right, Mr. Pena. Because you've acknowledged that you're guilty as charged in Count Three of this indictment, and you because you know your rights and are waiving them, and because your plea is entered knowingly and voluntarily and is supported by fact containing each of the essential elements of this offense, I accept your guilty plea and adjudge you guilty of Count Three of this indictment.

Now, the next step will be the probation office will prepare a presentence report to assist me in sentencing you. You'll be interviewed by the probation office. It's important that the information you give the probation officer be truthful accurate and complete. The report is important in my decision as to what your sentence will be. And you and your attorney

will have a right and opportunity to examine the report, challenge the content on it and speak before I impose sentence. I'll also hear from the government if they wish to be heard at the time of sentencing.

THE DEFENDANT: Yes, sir.

THE COURT: Why don't we schedule sentencing for August 14th, at 10 o'clock.

MR. PODOLSKY: That's fine, your Honor.

THE COURT: Then I'll see all the parties at that time.

MR. WILLSCHER: Thank you, your Honor.

MR. PODOLSKY: Thank you, your Honor.

THE COURT: You're welcome.

(Adjourned)